I represent the Superior Voters of the United States v. Jesus Evans-Martinez, and I think maybe I'll start by addressing the supplemental questions of the court issue that we've been working on. So maybe it's important to answer the question. So the first part of the question is, was the district court erred when it used 120 months imprisonment as the advisory guidelines set out? Well, to all three counts, the court cited United States v. Kennedy from the D.C. assertion. First of all, the short answer to that question is yes, but I don't think this record establishes clearly that the district court used 120 months for all three counts. What it does show clearly, what the district court did not do, was use the sentencing range of 30 to 37 months as the starting point for counts 1 and 3, which did not involve any trumping of the sentencing range by the application of the Mandatory Minimum Statute. And so we think, and we've argued, that one of the problems with this case is that one can tell from the record that the district court started with 120 months, started with the government's recommended sentence, which was 8 years and 96 months, started with 15 years, which is the sentence given the last time around, or maybe started with 20 years, which is the statutory maximum on count 2. But in any event, if one concludes, and it might be possible to conclude on this record, using 120 months or using some number other than 30 to 37 on counts 1 and 3 was a procedural error. And part 2 of the question, then, is whether this court should recognize that error through a sentence. Are you asking us to vacate a man as to all three sentences? Yes. Is there anything in the record that indicates to you that the district court might impose a different sentence? Well, in fact... 120 months is one sentence. The other two sentences are much higher, assuming that sentence is adjusted. Your client is still going to be serving a long time. Well, first of all, on count 3, the 160-month sentence is a plainly illegal sentence. It's just plainly illegal. But count 3 carries a maximum term of 10 years, and the judge imposed 160 months. Okay, let's just simply agree with you on that. But what about the other two sentences? On count 1, the sentence imposed on 160 months is improper substantively and procedurally because what the judge did was he used... Let's assume that the court's question is right. Let's assume that the court used 120 months to start on all three counts. That's a significant problem. The reason it's a significant problem is this. This court cannot evaluate the reasonableness of any variation when the court uses the wrong starting point to begin its analysis of what the sentence should be. And I think this case illustrates it. For example, a 160-month sentence, which is set to post here, might be viewed as far more reasonable if one was examining a three-count case where all three counts carried a 10-year mandatory minimum. But this is not so. In this case, only count 2 carries a 10-year mandatory minimum. The other counts carried a guideline range of 30 to 37 months. And so when one looks at the variation in the final sentence, it's very hard to understand why or how you can get to 160 months on count 1 and you can't get to 160 months on count 3. But you can on count 2. Yes, and you can. So we can assert 160 months. Well, unless the court demands all three counts, which is what we say should happen. Well, what leads you to believe it would make any difference? I mean, there's nothing in the record, except your hope, that he would rethink count 2 because count 2 appears to be appropriate. As long as you've got to serve 160 months anyway, we assume count 3 is wrong. Leave it anywhere where he counts, there might be less.  And the reason I don't think so is because you can't tell from this record where the judge started. That is the sede qua non of the analysis. You have to have the correct starting point. And the judge said various things. And here's how we know it can't be right. So we're at the sentencing. There's a 10-year mandatory minimum that applies to count 2. The court thinks it basically applies to all three counts, maybe. But anyway. And the government begins his presentation by asking the judge to grant the motion for downward departure and a motion under 3553E to break the mandatory minimum. And the judge purports to grant that motion. And then his immediate report after that is, I won't be following the government's recommendation. And then he talks about how the offense conduct or the non-offense conduct, the other conduct, never charged by the government, but known by the government, would justify starting at 20 years. So ordinarily when one grants a motion, when the judge grants a motion, he gets some aspect of the relief that the motion sought. The government's motion sought a sentence under 10 years. And so immediately upon granting a motion seeking a sentence under 10 years, the judge says, maybe I'll start at 20. Or he says, maybe I'll start at 15. It's not clear because he doesn't talk about sentencing, no, but then he remarks that he's given eventually the defendant a sentence 20 months less than had been imposed the first time around. And Cardi demonstrates that you have to state what the starting point is. And then you have to demonstrate why a variance is reasonable. And the greater a variance, the more reasons one needs to have. And I think that's the teaching of Gall and Kimbrough in this report. Let me ask you a question. It seems in your very end of your opening brief, around pages 70 to 72, you at least implied that 5K2.2 of the sentencing diagrams is unconstitutional. Are you making that argument here? I mean, did you intend to make a constitutional argument? I don't think so. Thank you. So the way that one can see that the sentence is procedurally flawed is by noting in the record that it's ambiguous. When we get to the substance of reasonableness, the way we note that the sentence is unreasonable is because the court leaves no room for any more serious conduct to be sanctioned. So if you look at Count 3, for example, which is a tampering with a witness, in the full panoply of conduct that constitutes tampering with a witness, this conduct wasn't that egregious. It was pulling his wife from the jail after being arrested and asking her to throw away some evidence that the government had overlooked. So that's a crime. There's no doubt about it. But if you have a statute that Congress said can carry up to a 10-year sentence, and you impose a 10-year sentence, forget for a second about the illegal 160-month sentence imposed, on that kind of conduct you have left no room for any more egregious conduct to be looked at and further sanctioned. So what you have is a situation which is kind of the other side of unwarranted disparity. You have a situation where you have unwarranted similarity because you have a sentence for not particularly egregious with tampering conduct that is at the statutory maximum and beyond, and yet that statute includes all kinds of contracts. It includes hurting people. It includes all kinds of stuff. And the same is true with Count 1. Count 1 had a sentence in the range of 30 to 37 months, and in the grand scheme of sexual abuse conduct that could occur and be sanctioned by that statute, this isn't conduct that I want to defend as something that's good. That I'm not defending. What I'm saying is that if one looks at the conduct that could be sanctioned under that same statute, it includes far, far, far more serious conduct. This is the same judge who made a comment that he found in the random cases that he's had, was the worst conduct that he's seen. Well, I think his—this brings me to another point here. He did say that. And one of the other reasons why he suggested that the sentence need to be reversed and remanded, and actually to a different judge, because Judge Hiller basically said, look, I can't do anything else than I've done here, and so if it has to come back, let it go back to a different judge. In a way, it's almost the opposite to the mirror image for Sam, where Judge Kuhnhauer essentially would say, look, the only sentence I can give for Sam is 22 years, and the court is to remand it to a different judge here. He saw it twice. Right. And Judge Hiller saw this case twice. And it was the first time on a no-discussion report, 32-H, and the court never reached the other issues that were raised in that first appeal. So, in any event, the reliance on uncharged content that was specifically contemplated by the plea agreement, that it wouldn't be charged, that the government knew about it, and this is a term of the agreement, to then use that as the touchstone of the sentencing seems to me to deny the benefit of the bargain. I may agree with you on that. The government should be forced to charge it and prove it. But the sentencing guidelines appear to allow that. Well, they do allow it. But when we look in the context of this case where you have the 3553E motion, the 5K1.1 motion, where the statute, 3553E, itself says that the government's recommendation is a reward for helping. The government's recommendation has been titled substantial weight. There's no suggestion that the judge gave substantial weight to the government's recommendation. And so we think that all in all, the sentence is substantively unreasonable. And it's procedurally flawed because the starting point is not properly articulated. But even if one takes the view that this court seems to take, is issuing its order, we should be additionally prepared to talk about starting at 120 months, in all three counts, is procedurally flawed. And that alone, we suggest, requires reversal. And you can't just reverse one count. The whole sentencing package notion pervades the jurisprudence of the sentencing suggests to me that You're not suggesting that judges which group count 1, 2, and 3 for purposes of sentencing, right? No, but I'm not related to crimes. Well, 2 and 3 were judges related to crimes. 1 did not group. But after you reach the total punishment calculation, which we think is the, is basically the guidelines calculation, including going to Section 5A, you then reach that point. Then under 5G1.1 and 5G1.2, you have one count as to which the sentencing range is trumped by the mandatory minimum. And so as to count 2, you have the trumping by the mandatory minimum statute, and you have 120 months' range. But as to the other two counts, you don't. And so once one is looking at variance, you have to analyze the variance in count 1 from 30 to 37 up to 160. Well, I think that was the point that you were making. Judge Nelson, does it really make any difference since we're going to do 120 months anyway? And probably. I think you'd lose your argument to say he couldn't impose 160 months on count 2. I'm not saying that he couldn't do it. What I'm saying is that doing it in the way that it was done was procedurally flawed, and doing it with the lack of justification was substantively unreasonable. You could get to that result in some case, maybe some case a lot like this case, but you can't get there and have it hold up on the field with the records we have. That's what I'm getting at. Do you have a moment, or do you want to keep it or stay? Good morning. May it please the Court. I'm Larry Chong. I'm the Assistant United States Attorney here in Honolulu, arguing for the government. Thank you. I, too, like my friend, Mr. Wolf, read your Honor's order very carefully, and if the Court would allow me to begin with that. I assume those are questions that are of paramount importance, or else you wouldn't have asked them. I would like to take the second question first, namely, must this Court notice the alleged procedural error as part of its review of the sentence under the Rassam case? I would submit that it must not, or rather, to put it alternatively, while you have the discretion to examine for procedural error, it does not require that you find or examine this particular procedural error, which was never raised in the district court, never raised on appeal, and, in fact, the civil spontane brought to the forefront by this Court. Rassam, I will agree, has expansive language that essentially suggests that if the substantive reasonableness of the sentence is challenged, then the Court has an obligation to examine the procedural methodology used in arriving at the sentence, and I understand the reasoning. The reasoning seems to be that a procedural flaw can result in a substantive error. The one difference I see in Rassam is essentially, I believe, the subtext of some of the Court's questions, Judge Day and also Judge Nelson, and essentially, in this case, the alleged procedural error that the Court asked about wouldn't have made any difference whatsoever. In Rassam, you had a downward variance that was incredibly substantial, 43 years from the bottom of the guidelines range as calculated by the Court, and you had an argument by the government as the appellant that there was a substantive unreasonableness to the sentence because the Court failed to address the 3553A factors argued by the government at sentencing and failed to engage the government in the kind of dialogue and giving the statement of reasons as required procedurally under 3553B. And the way I read the panel decision in Rassam is that because they are intertwined and because what the Court did procedurally deprived this Court of a record from which meaningful appellate review could be had, then the Court had an obligation to look at procedural error. In essence, it mattered there because they couldn't tell in their eyes what the reasons were for such a substantial value variance and whether those reasons were sufficient and in compliance with other Ninth Circuit cases saying that you have to justify the extent of the deviation with reference to the 3553A factors. Now, in our case, as Judge Nelson, I think, pointed out and Judge Bail, it doesn't matter. There is no dispute at all that whatever the guideline range was on counts one and three, it was trumped by the top count, count two, which undisputably had a mandatory minimum of 120 months. The Court then, to resolve any doubt after the initial remand after our Evans-Martinez one case, issued a notice to the parties saying that it intended to depart upward from that point or very upward and invited the parties to submit memoranda on the point. Everyone in the courtroom came to the sentencing knowing that the argument would not be over what the guideline range was on counts one and three, but rather on a 3553A analysis taking into account all of the aggravating and mitigating circumstances that were pointed out by Judge Ezra, gleaned from the PSR in the first round, as well as the mitigating circumstances consisting of cooperation under 5K1.1 and the other arguments made by Mr. Wolf's colleague in his written submission. The guideline range as to counts one and three, which in any event would have run concurrently under Kennedy, didn't matter one bit. So given that scenario, I just have a very hard time believing that Rassam could, and certainly should not be interpreted as creating an expansive rule which essentially requires every panel of this Court to undertake a de novo examination of every single calculation that went into a guideline range in a sentencing where neither party saw fit to object to it and the Court simply imposed it on the basis that it was appropriate. And it didn't matter to whom. Well, you concede the sentence was wrong on number three. I absolutely do, Your Honor. On whom? On whom? You do not. I absolutely do concede. That was plain error because it exceeded the 121 statute. So you have to re-sentence it on number three. Isn't that correct? Well, it depends on what Your Honor means by re-sentencing. I believe that if the balance of the sentences confirmed by this Court as being procedurally correct and substantively reasonable, I think you can vacate the sentence remand on count three with directions that the Court imposed on the 121 sentence. I cannot vacate remand as of all three. I believe so, Your Honor. I realize there's a body of case law saying that if the sentences are part of a package and one part of it comes unraveled, then the district court should have the opportunity to reassemble it in some fashion that he or she sees fit. But it's plain from the record here what the district court intended. The only issue is whether that was substantively reasonable and procedurally correct. Your Honor, if I may, I very much want to engage, but I do want to address Kennedy if the Court will allow me to do that. Kennedy, as far as I can tell, has never been cited in the United Circuit. As far as I can tell, Kennedy has never even been cited in any other circuit as to the point that it was cited for in this Court's order. While I'm not free to give you the citation unless one of the Court members asks, I can represent that there is an unpublished panel decision from the Ninth Circuit which goes against Kennedy and was issued after Kennedy. And if, in fact, Rassam is to be applied, I would submit that it has to be applied in a plain-error context in the case before you. In other words, if the Court is going to entertain whether or not the Court improperly used the 120-month range as to all three counts for advisory guideline range, that has to be reviewed for plain error. And I don't think that the error in any way, shape, or form is plain or obvious when it would rely upon one D.C. Circuit case 12 years ago that's never been cited for the same proposition and appears contrary to an unpublished decision of this Court. This Court, in that unpublished decision, did not cite Kennedy, but construed 5G 1.2, the exact same provision, in exactly the opposite way that Kennedy did. And while that's not binding precedent, as we all understand, all of us in the trenches tend to view anything any panel of the Circuit publishes as having some persuasiveness. Yes, but it's on point. You may cite to it. But you may cite to it as persuasion authority. And that's the only time you would cite to it or mention it. Or log the case, perhaps. But, Your Honor, my point is if Mr. Wolfe is here saying that this is a plain and obvious error that all of us in the courtroom on both sides of the aisle, as well as on the bench, should have caught, I just don't think it fits into that category on the first two prompts of plain error review when there is this unpublished decision. There's even a published decision, if I may. I didn't give a 28-J, but this is in response to the Court's letter. United States v. Salter, S-A-L-T-E-R, 241 Fed 3rd, 392 Fifth Circuit, 2001. Again, after Kennedy. Doesn't cite Kennedy, but reaches a result contrary to said Kennedy. In a nutshell, there you had two offenses. One was a drug offense carrying a 10-year mandatory minimum, much like our case, in a different type of offense. And there was a money laundering offense, which carried no mandatory minimum. The guidelines calculated the single unitary offense level for those two counts at 87 to 108 months, which was then increased and trumped by the 120-month mandatory minimum on the drug offense. The Fifth Circuit, without giving any great explanation, said 120 months was the appropriate sentence and didn't distinguish between the two counts. They didn't say, as Kennedy did, that you have to derive a separate guideline range for the count not carrying the mandatory minimum. But in those cases, the two counts were grouped. You couldn't group them first to give them a second assertion. Yes, Your Honor, I believe those two counts were grouped. And two of our counts here were grouped, too. But the structure of the guidelines, I believe, talks about deriving a single offense level with a single punishment to be imposed on all counts concurrently, as opposed to what Kennedy seems to imply, which is that you basically impose separate punishments at different amounts at different counts. Now, there are, of course, exceptions to that. This is where the statute requires a mandatory and consecutive sentence, such as a 924C or an aggravated identity theft. But with the exception of that, the philosophy, the nature, the structure of the guidelines all seem to imply that there should be one offense level, one punishment. One total punishment, which is defined in one section as being a combined punishment, imposed concurrently on all counts. And I think that's consistent with what is done here, contrary to Kennedy. So I don't think that Kennedy makes or creates a basis for procedural error in this particular case. Well, hypothetically, you should sentence for each count rather than group them, even informally, because there's always a possibility that when you do a little extra stuff, he finds out that his actual innocence comes back in your name, and gets, say, two counts vacant completely, reversed. So there may be only one count, the 120-month count, that remains. So it does make a difference, doesn't it? It could make a difference in some cases. I don't know what I did. Well, speak up. Don't worry about it. I know how to sit down. I'll get back to you, but that won't be on the record. It does not make a difference in this case, because we're not dealing with anyone trying to vacate or overturn their conviction. This would be a plea on all three counts. We're not dealing with the circumstance that Your Honor raises, although I would gladly agree that that is a hypothetical possibility. What I am saying is, in attacking Kennedy, because I really urge the Court not to follow this case, I believe it's contrary to the structure of the Guidelines, which does have all these rules, such as grouping, and if the counts don't group, then you apply a unit analysis. But the goal is to derive a single offense level and a single total punishment that is imposed across all counts. It is true there's a punishment on each count, but typically, unless it falls in a statutory exception, or if the total punishment exceeds the amount on a particular count, typically the same punishment is imposed on each count concurrently. So in Your Honor's example, if two counts were vacated, the Court could have the opportunity to decide whether to send it back to re-sentencing or to simply affirm the sentence on the other counts after applying the Guidelines. What do you urge us to do? What do you view should be the bottom line? Well, there's good and bad from my standpoint. I'll start with the bad. I think you have to acknowledge that there's been a mistake made and it has to be corrected. Once that is there, why don't we let the Court review the full package? Because I don't believe on a review of this record there is any reason to suggest that the reduction of the sentence from 160 to 120 months on the sex abuse charge, or witness tampering charge, rather, would affect the judge's consideration of the 35 different claim factors. He said it all there. He gave an extraordinarily detailed explanation of his reasoning. It's more detailed than the reasoning given by the District Judge in the Mohamed case, which was affirmed by this Court. He touched on all the 35 different factors. He even showed his reasonableness and his careful consideration by reconsidering the factors the second time around and giving an additional 20-month reduction for post-defense rehabilitation. This is not a judge who just had a dogmatic view of this, who could ignore every single fact that this would be working. He carefully analyzed the factors. He pointed out that while there might be a hypothetical way in which witness tampering could have been worse, the total package of mitigating and aggravating circumstances here, presented by this defendant, compelled a sentence of 160 months. So you would have us vacate the count 3 sentence and remand with instructions to impose a sentence of 120 months. And then answer the other two counts? I would ask that the Court affirm the other two counts as being procedurally sound and substantively reasonable. What about Counsel's point that Judge Esler should have announced his starting point under the sentencing guidelines after granting the government's motion, where the government recommended 96 months? Do you think that Judge Esler, A, really gave consideration to that 96-month recommendation, as he should, and B, should state at what point he's starting to go up on sentencing guidelines before he gets to the guarantee instructions? I see him out of time. Thank you, Your Honor. In answer to the two questions, he did give consideration to the government's motion for downward departure. It's abundantly clear in the first sentencing that he said, I would have given you 20 years, but for the government's motion, so I'm giving you a five-year reduction for the cooperation that you've provided, because you have to be rewarded for that and, on the other side, be encouraged to cooperate. So he did give consideration to the motion. He just did not do it in the fashion that the defendant, Mr. Evans-Martinez, wanted it to be done. In answer to the first question that Your Honor posed, I don't see any case, although admittedly this is an unusual circumstance where you have both downward departure and upward variance, but I don't see any case that says there has to be a mechanical linear process by which the sentencing judge first needs to do the 5K1 motion, derive a new sentencing guideline range as part of an initial starting point and benchmark for the variation, and then bury up. In fact, that would seem to run contrary to this Court's precedent, where basically once the 5K1.1 motion is made for substantial assistance, what the Court does, the extent of the departure, is undeniable. So it would seem to be the intention to say that while you can't repeal it, we're going to require him to state what case he's given and use that as an example. Thank you very much. Thank you. It was a very long time for the court-wise. They decided not to try to figure out whether concurrent sentences that were vacated created a problem, didn't create a problem, and the court, I think, got the view that it gave a sense of what it had to be sentencing because it figured out whether it's really harmless or not. It's an almost impossible task, and harder on this Court than it would be sentencing a sister court. If we turn to the substantive reasons. So you'll be in a situation with count three, and this is a confessed error. Right. It has nothing to do with the substance of counts one and two, other than it doesn't have to do with the condition of the crime of counts one and two. It has to do with them having to cover over afterwards. So why do we have to send the whole thing back? Why not do what the government suggests, which is to vacate with instructions to reduce counts from 120 months and affirm misuse? Because that's contrary to this Court's sentencing package. There's prudence where when you unbundle the sentence, you tell the district court to go back and redo it, and I think that's actually a wise rule. And if we, if I could turn briefly to the substantive reasons of this, we have a case where the government was recommending a 96-month sentence, and now they're here saying a 160-month sentence was entirely reasonable. Both things can be true. And the notion that... Well, one thing isn't true. They didn't say that 96 months that they recommended was entirely reasonable. Well, they made the recommendation... They just finished 96. They absolutely... Do you see there's a difference? Do you think there's not a difference? I think there's a difference, but I would suggest that there's a distinction that doesn't really matter. They recommended the court 96 months. I just want to see if there's a difference. Well, what else? Now they're here saying 160 months, it doesn't matter how you got there. There's a scan error, there's a procedural error. Everything's okay. It's not a violation. It's not necessarily an illegal sentence. I think there's just some irony to the government taking a position in the same case to the courts. Well, it wouldn't be the first time when the government recommended a sentence except judges saw that conduct was being worse than the government did and did not want to give as much credit for cooperation as the government wished. That seems true. But on the other hand, the judge reported to grant the motion, which sought specifically a sentence under the statute of limitations. Is your position what's granting what you found out in 96 months? My position, no. My position is that if you're going to grant a motion, it's specifically asked, sentence this guy under the statute of limitations. The judge grants that to him. He only gives you some time. The release they asked for some part of it. He could have said this, which is what he didn't say. He said, I'm not going to grant that motion. I'm afraid I'm not going to give it to you because I'm never going to sentence this guy less than 10 years because of what else he did that I'm taking on account. But I am going to take into account the 5K1.1 aspect of the cooperation, and I will give him credit for that. That isn't what he did. He purported to grant the 3rd Infectious Disease Motion. That, in this context, in the way it came out, was a procedural error, leading to a subsequent vague, unreasonable sentence. We think the whole thing needs to be redone, and we agree with Judge Ezra about one thing, that it should be redone. That's what he said. What did he say? Did he say he didn't have a case to write? Yeah. He said that he didn't send a case. He didn't send a case to a judge because he's done all he's got to do. But that cuts toward the government's argument, how it came. Doesn't it? I'm not sure I understand the question. You said send it back to Ezra. The government said send it back to Ezra and say reason it's on the 1 count, where it's clear that it's an error was made. Well, if you're going to send it back on the 1 count, there's no point in sending it to this judge. That one. All right. Thank you very much.
judges: Farris, Nelson D. W., Bea